Filed 4/4/22

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re A.J., a Person Coming Under the Juvenile Court Law. | C093305 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>S.J.,<br><br>        Defendant and Appellant. | (Super. Ct. No. STKJVDP20190000308) |

APPEAL from a judgment of the Superior Court of San Joaquin County, Jose L. Alva, Judge.  Affirmed.

Gino de Solenni, under appointment by the Court of Appeal, for Defendant and Appellant.

J. Mark Myles, County Counsel, and Mark Doronio, Deputy County Counsel, for Plaintiff and Respondent.

1

We have, in several unpublished decisions, explained that the practice of "splitting" jurisdiction and/or disposition hearings, as was done here, by purporting to hold them separately "as to mother" and "as to father," is unauthorized and erroneous. A sister court also explained this in a published opinion in 2005. (*In re Joshua G.* (2005) 129 Cal.App.4th 189, 202-203.)

Nonetheless, this practice has continued. It has, in this case, complicated the entire record, and as shall be seen, caused confusion, unnecessary procedural difficulties and delays. We will explain again that this procedure is unauthorized and erroneous and, in this case, resulted in the (likely unintentional) forfeiture of appellant's claim on appeal. We will, nonetheless, as a matter of fairness, address appellant's issue on appeal since the juvenile court and parties were using an unauthorized procedure that resulted in the forfeiture of appellant's claim.

S.J., father of minor A.J., appeals from an order of the juvenile court bypassing reunification services. (Welf. and Inst. Code, § 361.5, subds. (b)(12) & (e); unspecified statutory section citations that follow are to the Welfare & Institutions Code.) He argues that the juvenile court erred by denying his request for a continuance and proceeding with a disposition hearing without transporting him from his place of incarceration to the hearing. Although we find error in the manner in which these proceedings were conducted, we further find it was not error to deny father a continuance of the hearing and we affirm the juvenile court's orders.

FACTS AND HISTORY OF THE PROCEEDINGS

On July 31, 2019, A.J., then 11 years old, was taken into protective custody after father and stepmother were arrested for armed robbery. A.J. had been in father's sole custody since he was a baby and did not have a relationship with his mother. Before father's arrest, A.J. and father had been homeless and living in father's vehicle.

2

On August 2, 2019, a section 300 petition was filed on A.J.'s behalf, alleging that the minor came within the provision of section 300, subdivision (b), failure to protect; section 300, subdivision (g), no provision for support; and section 300, subdivision (j), abuse of sibling. At the August 5, 2019 detention hearing, the juvenile court found the San Joaquin County, Human Services Agency (Agency) had made a prima facie showing that A.J. came within the provisions of section 300, was at substantial risk of danger, was removed from parental custody and was placed with his paternal grandfather.

The minor's mother made her first appearance and was appointed counsel at the September 18, 2019 jurisdiction hearing. Although father had obtained a signed transportation order for the hearing, he was not present at the hearing because he had been moved to a different institution. His attorney requested and received a continuance so father could be present.

Father was not present at the October 9, 2019, continued hearing and the hearing was again continued to November 20, 2019. Although a transportation order for father had been obtained, he was not present at the November 20, 2019 jurisdiction hearing either. The matter was continued to December 10, 2019, and father's counsel was directed to prepare transportation orders. Father, however, was not present at the December 10, 2019 hearing. The juvenile court appointed a guardian ad litem for the mother and continued the hearing for jurisdiction "Re: FATHER" to January 8, 2020.

The juvenile court signed a transportation order for the January 8, 2020 hearing but father was not present at the hearing because he had a conflicting court proceeding in another county. The juvenile court then proceeded with a jurisdiction hearing, purportedly just with regard to mother. The court struck and modified certain factual allegations as submitted by mother and the Agency, sustained the petition as amended, and found that A.J. came within the juvenile court's jurisdiction pursuant to section 300, subdivisions (b) and (g).

3

The sustained petition, as amended, included factual allegations relating to both father and mother, separately. The court then set the matter for February 19, 2020, for what the juvenile court described as a disposition hearing with respect to mother and a combined jurisdiction/disposition hearing with respect to father. The court signed a transportation order to secure father's attendance.

The Agency's disposition report recommended that A.J. continue in his placement in foster care, and recommended bypassing reunification services for father pursuant to section 361.5, subdivision (e) (incarcerated parent), but offering services to mother, who had been visiting A.J. twice a week, attending counseling, and had completed her parenting classes. Father was not taken to the February 19, 2020 hearing. The matter was set for a contested hearing, described as a contested jurisdiction hearing for father and a contested disposition hearing for both parents.

The contested hearing was continued due to the COVID-19 pandemic. On June 1, 2020, the juvenile court held an uncontested hearing at which it adjudged the minor a dependent child of the court, ordered the minor removed from parental custody, and provided reunification services for mother. This disposition hearing purportedly was held solely for mother, as father did not appear at the hearing. The juvenile court continued the jurisdiction/disposition portion of the proceedings as to father, excused mother from that hearing, and issued another transportation order.

Father was not present at the continued July 27, 2020 hearing. The juvenile court declared father to be A.J.'s presumed father and set a jurisdiction/disposition hearing for father for a later date, for which it provided yet another transportation order. It also set a dependent review date, purportedly for mother, only.

On September 4, 2020, the Agency filed a jurisdiction report recommending the juvenile court sustain the jurisdictional allegations with respect to father. The matter was heard on September 15, 2020. Father was, again, not transported, so the juvenile court continued the hearing to November 3, 2020. In the meantime, the juvenile court held a

4

review hearing for the mother on September 24, 2020, and extended her reunification services.

Although the juvenile court had signed transportation orders, father, who had recently been moved to prison in Kern County, was not transported to the November 3, 2020 hearing "because of COVID." Counsel for father and the Agency told the court that father had not been transported to the last five hearings because of the COVID-19 pandemic and had not been transported to the earlier hearings due to "an issue" with the county jail. Father's counsel said that father wanted to dispute jurisdiction and disposition and argued he was entitled to do so in person.

The Agency opposed father's counsel's request for yet another continuance, emphasizing that section 352 permitted the court to proceed in an incarcerated parent's absence and arguing, inter alia, that they were "way beyond the 60-day time limits for disposition," there had been 10 prior continuances, and mother was in reunification. Father had recently been moved from an out-of-county jail to state prison after reportedly accepting a plea agreement of two years, with a release date of "at least 2022." The Agency argued there were several grounds to bypass father for reunification and requested the court proceed with the hearing. Minor's counsel concurred.

The juvenile court declined to again continue the matter and stated it found the allegations in the petition true by a preponderance of the evidence. Father's counsel presented evidence, with respect to disposition, that father had sought out and participated in substance abuse, relapse prevention, female roles, and reentry services while in custody. Father had maintained contact with the social worker throughout the proceedings despite his in-custody status. Counsel argued father had raised the minor for the majority of the minor's life, had provided for the minor's mental health by providing mental health medication, appeared to love and care for the minor, and the minor had cried and called out for father when he was being taken to the receiving center. Father's counsel requested the juvenile court provide father with reunification services.

Minor's counsel opposed reunification services, arguing the minor had already been out of father's custody for over a year and father was not going to be released from custody for "at least another year." Minor's counsel also noted the seriousness of father's behavior that gave rise to jurisdiction, having committed an armed robbery with the minor in the car waiting for him. The Agency concurred, noting the minor had only recently shown any interest in having contact with father and that the armed robbery conviction also permitted bypass pursuant to section 361.5, subdivision (b)(12) (violent felony conviction). Both the Agency and minor's counsel also noted that the minor was in reunification with mother, which was scheduled for what they referred to as a 12-month review hearing in two months. The juvenile court bypassed father for reunification services pursuant to section 361.5, subdivisions (b)(12) and (e).

Father appeals from the juvenile court's November 3, 2020 orders.

## DISCUSSION

### I

### *Improper "Splitting" of Hearings*

A practice or procedure whereby a juvenile court "splits" jurisdiction, disposition, and/or review hearings, as the court did here, where such hearings are held "as to mother" and "as to father," separately is unauthorized and erroneous. (See *In re Joshua G.*, *supra*, 129 Cal.App.4th at pp. 202-203.)

Jurisdiction is taken *over the child*, not over or "as to" the parent(s). (See §§ 300, 355, subd. (a) [at jurisdiction hearing, court considers whether minor is a person described by section 300 and considers evidence "relevant to the circumstances or acts that are alleged to bring the minor within the jurisdiction of the juvenile court"].) " '[A] jurisdictional finding good against one parent is good against both. More accurately, the minor is a dependent if the actions of either parent bring [the minor] within one of the statutory definitions of a dependent. [Citation.] This accords with the purpose of a

6

dependency proceeding, which is to protect the child, rather than prosecute the parent. [Citation.]' " (*In re Alexis H.* (2005) 132 Cal.App.4th 11, 16.) The court gains personal jurisdiction over a parent when the parent is properly noticed. (*In re Daniel S.* (2004) 115 Cal.App.4th 903, 916.) Likewise, disposition is made *of the child*. (See §§ 355, subd. (a), 358 [proper disposition is made "of the child"]; see also § 355.1.)

For this reason, *there is only one simultaneous adjudication of jurisdiction, and one simultaneous disposition*. These orders are child-centric, not parent-centric, and cannot be "split" as to each parent. Additionally, review hearings are to be held within certain timeframes based on the dates the minor was initially removed, detained, or entered foster care. (§§ 361.5, subd. (a), 366.21, subds. (e), (f) & (g).) Thus, "splitting" review hearings is also improper. (*In re Joshua G.*, *supra*, 129 Cal.App.4th at p. 203.)

In this case, these errors resulted in the juvenile court purporting to hold jurisdiction and disposition "as to father," ultimately bypassing him for services, less than three months before "mother's" 12-month review hearing and *15 months* after the minor's detention. Not only has it caused confusion and resulted in father being lulled into sitting on his rights, it takes little imagination to see the prejudice to both father and the minor, let alone the added confusion, that would have occurred had the juvenile court determined reunification services for father were required or warranted. The period of reunification services is limited to 12 months from the date a child enters foster care (as defined by section 361.49) which, by the time of the November 3, 2020 hearing, had already passed. (*San Joaquin Human Services Agency v. Superior Court* (2014) 227 Cal.App.4th 215, 222.) Mother's services had been extended to 18 months (to January 31, 2021) pursuant to section 361.5, subdivision (a)(3) and section 366.21, subdivision (g)(3), but by the time of the November 3, 2020 hearing, father was too late to reunify with the minor within the reunification period and was also unable to establish any grounds for extending services.

7

The instant matter presents a prime example of *why* jurisdiction and disposition hearings cannot and should not be "split" as to each parent. This improper practice of "splitting hearings" needs to be corrected by the juvenile court and Agency so such errors do not continue to cause confusion and delays, or require reversal, in the future.

II

*Failure to Order Continuance to Secure Father's Presence*

Father contends the juvenile court should not have proceeded with the November 3, 2020 jurisdictional/dispositional hearing in his absence because he was incarcerated and had not executed a waiver of his appearance. He contends the juvenile court should have continued the hearing to secure his presence, as required by Penal Code section 2625. For the reasons that follow, we reject this contention.

A.    *Penal Code Section 2625*

Under Penal Code section 2625, when a proceeding is brought under section 300 to adjudicate the child of a prisoner a dependent child of the court, the court shall order notice of any court proceeding sent to the prisoner. When the court receives a statement from a prisoner or prisoner's attorney that the prisoner wishes to be present during the court proceedings, the court shall issue an order for the temporary removal of the prisoner from the institution, and for the prisoner to appear before the court. (Pen. Code, § 2625, subds. (b) & (d).) A hearing under section 300 may not be adjudicated without the physical presence of the prisoner or the prisoner's attorney, unless a waiver of the right of physical presence signed by the prisoner or an affidavit signed by the warden, superintendent, or other person in charge of the institution, or the designated representative, is presented to the court stating that the prisoner has, by express statement or action, indicated an intent not to appear at the proceeding. (*In re Jesusa V.* (2004) 32 Cal.4th 588, 622-624; *In re Marcos G.* (2010) 182 Cal.App.4th 369, 385.)

In cases where a prisoner parent is involuntarily absent from adjudication hearings, the reviewing court applies a harmless error-miscarriage of justice analysis to determine whether the prisoner was prejudiced by his or her involuntary absence at the adjudication hearing. (*In re Christopher L.* (2020) 56 Cal.App.5th 1172, 1184-1193.)

B.       *Timeliness of Contention that the Disposition Hearing was Erroneously Held in Father's Absence*

In this case, it is undisputed that father requested to be present and participate in the proceedings. Indeed, the record shows that multiple prisoner transport orders were prepared for father from August 2019 through November 2020. Nonetheless, father was not transported to the hearings for various reasons. Yet, father's contention that the juvenile court should not have proceeded to disposition without first complying with Penal Code section 2625 (by securing his presence or obtaining a personal waiver) is untimely.

There is, as explained above, only one jurisdiction hearing and one disposition hearing. The jurisdiction hearing took place on January 8, 2020, and, although a transportation order had been prepared, father was not present. The disposition hearing took place on June 1, 2020, and, again, father was not present. Any complaints regarding the juvenile court's failure to continue these hearings or secure his presence at these hearings, should have been raised in an appeal from the June 1, 2020 disposition hearing.

The time for appeal of an order made in a dependency case is 60 days from the date of the order's pronouncement in open court. (*In re Alyssa H.* (1994) 22 Cal.App.4th 1249, 1253-1254; *In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1149-1150 [in dependency proceedings, disposition order is the judgment for purposes of appeal]; *In re Candida S.* (1992) 7 Cal.App.4th 1240, 1249 [jurisdictional finding is not separately appealable but may be reviewed on appeal from disposition order]; § 395.) If no timely appeal is taken from a dependency order, the order is final and binding, the issues determined by the order are res judicata, and the order may not be attacked on appeal

9

from a later appealable order.  (*In re S.B.* (2009) 46 Cal.4th 529, 532; *In re Matthew C.* (1993) 6 Cal.4th 386, 393.)

Father did not appeal from the disposition order.  Accordingly, that order is final, and he cannot attack it based on the alleged violation of Penal Code section 2625 in this appeal.

### C.     Denial of Continuance of November 3, 2020 Hearing

Although it was error for the juvenile court to conduct the November 3, 2020 hearing as a second or continued disposition hearing "as to father," even if we could treat the November 3, 2020 proceeding as if it *were* a disposition hearing, father cannot show error in the court's order denying father a continuance of that hearing.

Section 352, subdivision (b) provides, in relevant part:  "Notwithstanding any other law, if a minor has been removed from the parents' or guardians' custody, a continuance shall not be granted that would result in the dispositional hearing, held pursuant to Section 361, being completed longer than 60 days, or 30 days in the case of an Indian child, after the hearing at which the minor was ordered removed or detained, unless the court finds that there are exceptional circumstances requiring a continuance. . . .  The facts supporting a continuance shall be entered upon the minutes of the court.  *The court shall not grant continuances that would cause the hearing pursuant to Section 361 to be completed more than six months after the hearing pursuant to Section 319.*"  (Italics added.)

Thus, when a child has been removed from the parents' or guardians' custody, as A.J. was here, the juvenile court may not grant a continuance that would cause the disposition hearing to be completed more than 60 days after the detention hearing, unless there are exceptional circumstances, and *in no event* may the disposition hearing be continued to a date more than six months after the detention hearing.  (§ 352, subd. (b); Cal. Rules of Court, rule 5.550(a)(3).)  The juvenile court *must* hold a disposition hearing

10

within these time limits even when an incarcerated parent's statutory right to be present at the hearing under Penal Code section 2625, subdivision (d), is violated through no fault of the parent. (*D.E. v. Superior Court* (2003) 111 Cal.App.4th 502, 505-506.)

The juvenile court here did not comply with these statutory time limits. The last day to which the juvenile court was permitted to continue the disposition hearing under section 352, subdivision (b) was February 5, 2020. While section 358, subdivision (a)(3), provides for an additional possible 30-day continuance where the social worker is requesting a parent be bypassed for services, which the social worker requested as to father here, that extended timeframe expired on March 6, 2020. Thus, the "disposition hearing" held on November 3, 2020, was already held several months beyond the statutorily permissible timeframe.

Father now argues that the juvenile court erred in not continuing disposition as to him *even further* beyond the statutorily prescribed time limits—indeed to *over 15 months from detention*—in order to permit him to be personally present at the hearing. We reject this contention. Even if the November 3, 2020 hearing could be treated as a disposition hearing, the juvenile court, did not have the authority to grant father a continuance. (*In re Christopher L., supra,* 56 Cal.App.5th at pp. 1184-1193; §§ 352, subd. (b), 358, subd. (a)(3).) The time requirements of section 352, providing that the disposition hearing must be completed no more than six months after the detention hearing, take precedence over any arguable statutory right of an incarcerated parent to be present at the disposition hearing. (*D.E. v. Superior Court*, *supra*, 111 Cal.App.4th at p. 512.)

Any argument that such a delay is not harmful to a minor is unsound given the statutory requirements of section 352, subdivision (b).

Moreover, the overarching goal of the juvenile dependency system is to promote the best interests of children within the system, and children in protective custody have an interest in the prompt resolution of custody status. *(D.E. v. Superior Court*, *supra*, 111 Cal.App.4th at p. 513.) Timeliness is of "vital importance . . . in the early stages of

11

dependency proceedings" (*Renee S. v. Superior Court* (1999) 76 Cal.App.4th 187, 198) and "delay disserves the interests of the minor, the parents, and the courts, and is clearly inconsistent with the intent of the Legislature." (*In re Taya C.* (1991) 2 Cal.App.4th 1, 8; see also *Jeff M. v. Superior Court* (1997) 56 Cal.App.4th 1238, 1242.)

A.J. had an interest in the prompt resolution of his custody status, as well as in reunification services, if appropriate. As we noted earlier, the period for reunification services is limited to 12 months from the time he entered foster care. Furthermore, lack of harm to the minor is not part of the statutory construct. Accordingly, we reject father's argument that he is entitled to relief because there would have been no harm to the minor had the court again continued the hearing.

Finally, as we have explained, properly construed, the November 3, 2020 hearing was not the disposition hearing. Accordingly, we reject father's argument that he was entitled to be transported to the November 3, 2020 hearing and, therefore, the court erred by proceeding in his absence. Penal Code section 2625 does not apply to each and every hearing in a dependency case. It applies only to hearings adjudicating a child a dependent of the court or hearings terminating parental rights. (*In re Barry W.* (1993) 21 Cal.App.4th 358, 369-370; Pen. Code, § 2625.) In any other dependency proceeding, as indicated in subdivision (e), the production of a prisoner is discretionary. (See *Barry W.,* at pp. 369-370.)

12

DISPOSITION

The orders of the juvenile court are affirmed.

 

 

_____
HULL, J.

 

We concur:

 

_____
BLEASE, Acting P. J.

 

_____
KRAUSE, J.